**SUBURBAN TRAILS, INC., and Suburban Transit Corp.,**
**Appellants,**

v.

**NEW JERSEY TRANSIT CORPORATION, New Jersey Transit Bus Operations, Inc., John P. Sheridan, Jr., Jerome C. Premo, Albert R. Hasbrouck, III, George W. Heinle, Martin Brody, Edward Borrone, David Lehmkuhl, Prentis C. Nolan, III, John L. McGoldrick, Jean Bogle, Richard B. Standiford and Roger A. Bodman.**

No. 85–5734.

United States Court of Appeals, Third Circuit.

Argued June 5, 1986.
Decided Sept. 11, 1986.

Robert B. Kaplan, (argued), Wilentz, Goldman & Spitzer, Woodbridge, N.J., for appellants.

Robert H. Stoloff, (argued), Jeffrey Burstein, James J. Ciancia, W. Cary Edwards, Atty. Gen. of New Jersey, Newark, N.J., for appellees.

Charles A. Webb, Arlington, Va., for amicus curiae, American Bus Ass'n.

Before ADAMS, WEIS, and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The issue in this case is whether a state regulatory agency may deny subsidies to plaintiffs, privately owned bus companies, because one of them competes with a state owned carrier on an interstate route. The district court determined that state regulation of commuter bus lines was not preempted by federal law and rejected claims of antitrust and due process violations asserted by plaintiffs. We conclude that the federal preemption and antitrust issues are not ripe for review because the state regulatory action is not final and more significantly is subject to modification by a federal agency providing the subsidies. We will remand for further factual development on one aspect of the due process claim as it may be affected by the ripeness issue.

Plaintiffs Suburban Transit and Suburban Trails service a number of bus routes in New Jersey. They are affiliated companies with common management as well as overlapping directorates and stock ownership. Defendant New Jersey Transit is the state agency charged with providing an efficient and coordinated public transportation system. N.J. Transit provides some transportation services directly through its wholly-owned subsidiary, New Jersey Transit Bus Operations, Inc., also a defendant here, which operates some 1800 buses carrying approximately 395,000 passengers daily. The individuals named as defendants are members of the governing boards of these two agencies.

In addition to its regulatory function, N.J. Transit is the state's designated recipient of federal grants under the Urban

Mass Transportation Act. 49 U.S.C. app. §§ 1601–18 (1982). These funds are in turn allocated by N.J. Transit to both private and governmentally owned companies for the purchase of buses and other capital equipment.

The underlying controversy here, a comparatively simple one, has led to complex constitutional challenges and administrative ramifications. Suburban Transit seeks participation in the federal grant program, but its application has not been accepted by N.J. Transit, whose staff has recommended that plaintiffs be declared ineligible for the program.

In June 1983, N.J. Transit submitted a proposal to the Urban Mass Transportation Administration (UMTA) seeking federal funds for replacement of aging buses in the fleets of privately-owned as well as state-managed carriers. Initially, the plan included an anticipated allocation of twenty-five buses to Suburban. In October 1984, however, N.J. Transit submitted a revised schedule to UMTA listing Suburban Transit and Suburban Trails as one entity and allocating it no buses.

In April 1984, Suburban Trails had acquired an Interstate Commerce Commission permit to operate bus service on Route 9 between points in New Jersey and New York City. Service on this line began in January 1985 and competed directly with a similar operation by N.J. Transit's subsidiary on one of its more profitable routes. This development prompted protests by N.J. Transit's staff over Suburban's failure to consult with the agency and the resulting disruption of the coordinated transportation plan for that area. Evidence in the record supports the plaintiffs' allegation of a connection between this competition on Route 9 and the recommendation that Suburban receive no new buses.

Plaintiffs filed their complaint in the district court in March 1985, alleging that N.J. Transit's action is preempted by federal legislation. Plaintiffs also maintain that the defendants' conduct violates the Sherman Antitrust Act and is a denial of due process. The case arrives here as an appeal from the district court's grant of summary judgment in favor of defendants.

Plaintiffs asked for a declaration that the defendants' actions were unlawful, for preliminary and permanent injunctions, and for damages. Defendants moved to dismiss the complaint, asserting that the matter was not ripe for adjudication because UMTA had not disbursed the grant funds and N.J. Transit had not yet made a final decision on allocation. In October 1985, however, N.J. Transit formally notified plaintiffs that it contemplated "declaring Suburban Transit/Trails ineligible for the receipt of buses and other capital equipment."

The district court rejected the defendants' contention that the matter was not ripe for decision, stating that the threats of sanctions against Suburban for engaging in service on Route 9 and the potential for harm were sufficiently serious to allow adjudication of the plaintiffs' claims.

Plaintiffs contended that the defendants' actions were in conflict with the Interstate Commerce Act and its amendment, the Bus Regulatory Reform Act of 1982, 49 U.S.C. §§ 10101 *et seq.*, and hence violated the supremacy clause. The district court disagreed, concluding that Congress had not intended those statutes to displace local regulation of commuter bus service. Moreover, the Urban Mass Transportation Act, "with its numerous provisions encouraging state and local planning in the commuter transit sphere, necessarily refutes any contention that Congress intended to oust state regulation in every area of the mass transit industry." *Suburban Trails, Inc. v. New Jersey Transit Corp.*, 620 F.Supp. 1383, 1391–92 (D.N.J.1985).

In the district court's view, plaintiffs failed to establish that the acquisition of a permit from the ICC barred N.J. Transit's attempts to regulate Suburban through denial of a subsidy. As the court phrased it, "while bus operations which are truly interstate in character might make a strong case for a finding of federal preemption, the inherently local nature of the commuter bus operations ... counsels against giving

undue emphasis to federal concerns here.... [T]he regulation of ... commuter services ... is best left largely to the expertise of officials located where those operations lie." *Id.* at 1393. The court therefore concluded that the defendants' actions were not preempted by a "federal occupation of the field."

Plaintiffs also argued that defendants had violated § 1 of the Sherman Antitrust Act by eliminating competition, not only on Route 9 but in other markets and territories as well. The court rejected this challenge, holding defendants immune from liability under the state action exemption. Defendants functioned as agents of the state in carrying out the explicit policy of the New Jersey Legislature to "avoid destructive competition." N.J.Rev.Stat. § 27:25–2 (1981). Consequently, the court concluded that the *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), exemption applied.

The district court also rejected the claim of deprivation without due process, finding that plaintiffs had no protectible property right in transportation subsidies. Since N.J. Transit had not denied the plaintiffs' right to operate on Route 9, but had only threatened to refuse to provide subsidies, the court found no deprivation of any entitlement.

On appeal, plaintiffs renew their contention that the issuance of an ICC certificate to operate on Route 9 demonstrates federal preemption of state power to regulate that service. According to plaintiffs, Congress determined through enactment of the Bus Regulatory Reform Act of 1982 that competition is desirable in the interstate bus transportation industry. N.J. Transit may not contravene that policy by forcing plaintiffs to discontinue competing service on Route 9. Plaintiffs also challenge the district court's finding that commuter service was outside the scope of the Bus Reform Act. They assert that the ICC considered the effect of Suburban Trails' Route 9 service on commuter operations and that the Commission's determination to grant an op-

erating certificate forecloses state efforts to eliminate competition.

Plaintiffs also point out that UMTA has sought to encourage competition, noting its recent interest in promoting opportunities for private carriers. UMTA has issued policy statements discussing the need for "private enterprise participation in the Urban Mass Transportation program."

The plaintiffs' principal argument on the antitrust issue is that the *Parker v. Brown* exemption applies only to state action regulating intrastate activity. Because the Route 9 service is an interstate operation, plaintiffs reason that the state lacks power to regulate competition on that line, and therefore the basis for the *Parker* exemption falls.

In this court, plaintiffs also stress their status as separate corporations. They maintain that only Suburban Transit applied for a subsidy, while Suburban Trails, which operates the competing line, made no request for funds. Plaintiffs argue that N.J. Transit improperly denied subsidies to Suburban Transit because of the competitive efforts of its affiliate.

Defendants respond that the issue of separate identities was not raised in the district court. N.J. Transit contends that the two Suburban companies acted as one in applying for participation in the UMTA program and that, in any event, affiliated companies may be treated as one if necessary for effective regulation.

Additionally, N.J. Transit argues that because plaintiffs are free to make use of their ICC permit in any event, a denial of subsidies is not the type of state conduct susceptible to preemption under the supremacy clause. N.J. Transit denies that its refusal to subsidize a competitor amounts to an infringement on the plaintiffs' rights.

I

■ In the district court, N.J. Transit argued that because it had not made a final ruling on the plaintiffs' application for a grant, the case was not ripe for judicial

review. Although staff members had expressed their disapproval, a formal denial must come from the Board itself.

Apparently because of the favorable judgment in the district court, N.J. Transit does not press the ripeness argument here, but we believe it to be a serious problem. We have held that ripeness of issues for adjudication is a matter we must raise and examine independently of the parties' wishes. *Southeastern Pennsylvania Transp. Auth. v. I.C.C.*, 644 F.2d 253 (3d Cir.1981). *See also Regional Rail Reorganization Act Cases*, 419 U.S. 102, 138, 95 S.Ct. 335, 355, 42 L.Ed.2d 320 (1974).

The record shows that on August 2, 1985, UMTA issued a preliminary approval of N.J. Transit's grant request authorizing the purchase of 250 buses. This letter specifically stated, however, that "[a]llocation of these buses is subject to the concurrence of UMTA." The letter also referred to UMTA's desire for resolution of certain key matters, including "outstanding private/public issues" implicating "the role of the private sector in decisions pertaining to new or reconstructed service." UMTA also commented that "N.J.T. has a unique opportunity, through comprehensive planning, to integrate and coordinate N.J.T. bus, rail and private bus operators which have developed over the years."

To accept this UMTA grant, N.J. Transit is required to sign a "Joint Statement of Understanding," which includes a provision that allocation of buses is subject to approval by UMTA. The record does not reflect whether N.J. Transit will agree to UMTA's proposal but does confirm the understanding of state officials that UMTA has the ultimate power of approval over any allocation plan. N.J. Transit's Assistant Executive Director noted that "UMTA has specifically stated that the final allocation is still subject to its approval." The Executive Director similarly acknowledged that the state agency's decision "would not be final because UMTA has retained the right to veto that allocation."

In addition to the lack of a final order, the status of currently pending state and federal administrative proceedings is an important consideration. In October 1985, N.J. Transit notified plaintiffs that the agency contemplated "declaring Suburban Transit/Trails ineligible for the receipt of buses and other capital equipment.... N.J. Transit will hold in abeyance further consideration of the number of buses to be allocated to Suburban pending the outcome of the proceedings." Those proceedings are still pending. Moreover, in its brief Suburban Transit has informed us that it filed "an administrative complaint against N.J. Transit before UMTA, which is currently pending with UMTA."

We are thus presented with a situation in which the allocation of buses—the plaintiffs' principal concern—is subject to a decision by N.J. Transit which has not yet been formally made and which is further subject to a veto by UMTA. In addition, plaintiffs are presently parties to an administrative proceeding before N.J. Transit which could affect their eligibility to participate in the bus grants. And, of crucial importance, the plaintiffs' complaint before UMTA has yet to be resolved.

These circumstances raise questions of ripeness and finality that are not easily dismissed. The requirement of ripeness serves to prevent "the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." It also protects "the agencies from judicial interference until an administrative decision has been formalized and its effect felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

Courts are discouraged from acting before issues have been properly presented, and the general policy against piecemeal review applies in the administrative field as in other types of litigation. Until an agency has completed its work by arriving at a definitive decision, judicial review is premature. In deciding finality, the question is "whether the process of administrative decisionmaking has reached a stage where

judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined." *Port of Boston Marine Terminals Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970).

In general, the Supreme Court views finality flexibly and pragmatically. But in *Williamson Co. Regional Planning Comm'n v. Hamilton Bank*, — U.S. —, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), a constitutional challenge to the action of local zoning authorities was dismissed as premature because the plaintiffs had never obtained a final decision from the local agency. *See also MacDonald, Sommer & Frates v. County of Yolo*, — U.S. —, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986).

In *Hooker Chem. Co. v. EPA*, 642 F.2d 48 (3d Cir.1981), we declined to review the merits of a dispute where the agency had not yet adopted a position that could "be deemed as 'final.'" Under the circumstances, we felt that "review of the agency's conduct ... would be an interference with an active administrative proceeding." 642 F.2d at 53. *See also Wearly v. FTC*, 616 F.2d 662 (3d Cir.1980).

An additional consideration is whether declining immediate review will result in hardship to the aggrieved party. That factor strongly influenced the *Abbott Laboratories* decision to permit judicial review. There, the plaintiffs confronted the dilemma of either taking costly measures to comply with an administrative regulation or being criminally prosecuted. *See also A.O. Smith Corp. v. FTC*, 530 F.2d 515 (3d Cir.1976).

There is no evidence that plaintiffs face hardship in the postponement of their challenge pending the UMTA's ultimate determination on bus allocation. In that aspect of the case they are neither compelled to do anything nor threatened with criminal sanctions for continuing their normal opera-

tions. At most they face some uncertainty over their eventual inclusion in the grant program. That, however, is not sufficient hardship to cause a court to review agency action that cannot be deemed final. *Cf. FTC v. Standard Oil of Calif.*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) (burden of responding to charges made by the FTC is not hardship warranting judicial review of the agency's decision to initiate proceedings by filing a complaint).

The procedural status of the present litigation also serves to distinguish it from the *Abbott Laboratories* line of cases. Here, the court is not asked to conduct preenforcement review of a federal agency's regulation under the statutory procedures of the Administrative Procedure Act. Rather, the court is confronted with a constitutional challenge to the action of a state agency in administering a federal grant program. In this milieu, the issue of ripeness inevitably becomes intermingled with considerations of federalism, *see Public Service Comm'n v. Wycoff Co., Inc.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), and the precept of avoiding unnecessary decision of constitutional and other issues, *see Regional Rail Reorganization Act Cases*, 419 U.S. 102, 138, 95 S.Ct. 335, 355, 42 L.Ed.2d 320 (1974). *See also* Fuchs, *Prerequisites to Judicial Review*, 51 Ind.L.J. 817 (1976).

To some extent, the posture of this case is similar to that in *Ohio Civil Rights Comm'n v. Dayton Christian Day Schools, Inc.*, — U.S. —, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), where the Court determined that the threat of prosecution created a sufficiently ripe controversy to allow judicial intervention, but then found *Younger* abstention appropriate.[1] There is a crucial difference here, however, for even if the actions of N.J. Transit standing alone were sufficiently final to permit review at this point, we are faced with the unique circumstance that the state agency's decision on the allocation of buses is subject to

---

1. We conclude that *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), abstention is inapplicable here because proceedings in the district court had progressed to the summa-

ry judgment stage before N.J. Transit instituted its formal administrative proceeding. C. Wright, *Law of Federal Courts*, § 52A (4th ed. 1983).

review by UMTA and cannot be final until that event occurs.

This case does not present the usual "one on one" dispute in which the plaintiff contests the action of a single agency. This is a tripartite controversy in which the position of a significant participant is largely unknown at this stage. "Agency action may be found not ripe for review because the need will not arise until some action is taken by third parties who are not involved in the review proceeding." C. Wright & A. Miller *Federal Practice and Procedure* § 3532.6 (1984). Here, the views of UMTA, a very significant third party, are not developed in the record.

Conceivably, UMTA and N.J. Transit will agree on granting or refusing buses to Suburban Transit. They may, however, disagree, in which event N.J. Transit might not receive any buses for allocation. Obviously, under the circumstances, the decision of the UMTA might well result in disposition of the plaintiffs' claims without the necessity of reaching the questions presented here.

The present case resembles *Air California v. United States Dept. of Transp.*, 654 F.2d 616 (9th Cir.1981), which also involved the interplay between state and federal agency actions. There, the FAA informed a local airport regulatory body that it was violating a federal airport funding statute. Two airlines sought to challenge the FAA's determination. The court dismissed their suit as unripe for judicial review, reasoning that the agency action could not be deemed final until the local board's response to the FAA's recommendations had been evaluated.

Thus, in a way, *Air California* presents the reverse of the situation at hand. Here, finality is contingent on further action by the federal agency rather than by the state agency. But the important circumstance— that a contingency exists—makes judicial review premature in this case. N.J. Transit's proposed bus allocation cannot be final when implementation of that agency's decision depends on the concurrence of UMTA, an unpredictable event at this point.

Even if we overlooked the lack of finality in the administrative proceedings, another limiting factor must also be recognized, that of primary jurisdiction. In agency review cases, this concept applies to claims originally cognizable in the courts which require resolution of issues that have been placed within the competence of an administrative body. In that circumstance, "the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–165, 1 L.Ed.2d 126 (1956). *See also* Davis, *Administrative Law of the Seventies* §§ 22:1–22:11 (1983). "[I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Far East Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952).

The district court recognized that the regulatory authority of UMTA was a relevant factor, but concluded that since apparently no formal federal agency complaint procedure existed, ripeness was not affected. 620 F.Supp. at 1389 n. 6. *Cf. Bradford School Bus Transit, Inc. v. Chicago Transit Auth.*, 537 F.2d 943 (7th Cir.1976) (court deferred to primary jurisdiction of UMTA where formal procedure was established to hear certain types of complaints).

The district court's view is unpersuasive here because the power of veto which UMTA has reserved, and the pending complaint which plaintiffs have filed with that agency, obviously call for action by UMTA rather than the courts in the first instance.

We note that if UMTA were to approve N.J. Transit's decision denying buses to plaintiffs, their next logical step might well be to challenge the federal agency action under the APA, rather than to reinstitute this action against the state agency. *See Rapid Transit Advocates, Inc. v. Southern California Rapid Transit*, 752 F.2d 373, 378–79 (9th Cir.1984). Federal administrative approval of the state agency's ac-

tion would weaken the plaintiffs' preemption claim.

Plaintiffs premise their preemption claim on the ICC grant of a certificate to Suburban Trails in the interest of free competition, an action allegedly incompatible with N.J. Transit's desire to restrict competition. But the decision of the ICC under the Bus Reform Act of 1982 is not the only manifestation of federal policy in this field.

The Urban Mass Transportation Act of 1964 provides federal financial assistance for mass transit systems "to be operated by public or private mass transportation companies as determined by local needs." 49 U.S.C. § 1601(b)(3). In amending the legislation in 1970, Congress restated its intent "to create a partnership which permits the local community through federal financial assistance to exercise the initiative necessary to satisfy its urban mass transportation requirements." 49 U.S.C. § 1601a.

UMTA has announced its policy to respect local decision-makers' flexibility in developing plans and programs to meet local transportation service requirements. However, "At the same time, UMTA is obligated to ensure that local decisionmakers fully and fairly consider the private sector's capacity to provide needed transportation services." 49 Fed.Reg. 41310, 41311 (Oct. 22, 1984). "UMTA does not consider it acceptable for localities to foreclose opportunities for private enterprise." Id. at 41312.

In a 1986 policy statement, UMTA repeated its commitment to promote "a greater competitive environment and increased opportunities for the private sector in the provision of mass transportation services and operations." 51 Fed.Reg. 3306 (Jan. 24, 1986). These statements are not necessarily at odds with the comprehensive plan developed by N.J. Transit. The partial approval of the grant in August 1985, while reserving to UMTA the right of concurrence in allocation, also recognizes N.J. Transit's opportunity to "integrate and coordinate" mass transportation in the state.

N.J. Transit will continue to maintain an active role in the distribution of federal mass transportation funds. Nonetheless, there is ample evidence of the control that UMTA asserts in awarding financial assistance grants and of its critical role in the controversy before us.

Professor Davis interprets the Supreme Court cases on primary jurisdiction as establishing a presumption that the "statutes agencies administer should be interpreted by the agencies before the courts interpret them." Administrative Law of the Seventies § 22.4 at 95. The preemption issue raised in this case would require the court in the first instance to determine the range of discretion given to state administrative agencies under the UMT Act. On this issue, the court should have the benefit of the UMTA's views before acting. See Regional Rail Reorganization Act Cases, 419 U.S. at 147, 95 S.Ct. at 360.

Thus, this case demonstrates a serious drawback to premature judicial review of agency action—that resolution of the dispute by the courts might be altogether unnecessary. As noted earlier, we have no indication of what position UMTA will take on the state agency's allocation proposal. By way of illustration only, if we affirmed the district court's judgment, UMTA would still be free to withhold funding for all or part of the grant program because it disapproved of the state agency's tactics.

At this stage of the proceeding, we are confronted with the lack of a final determination and the presence of UMTA's primary jurisdiction. In light of these factors, we conclude that insofar as this case concerns the question of current and future bus allocations, it is not ripe. Accordingly, the district court erred in ruling prematurely on the preemption and antitrust issues raised by plaintiffs.

II

■ The district court granted judgment for defendants on the due process claim under 42 U.S.C. § 1983, reasoning that plaintiffs had not shown that participation in the grant program was an entitlement to which due process requirements would attach. Because this issue also is not ripe insofar as it applies to the pending application for buses, we do not address it.

An unsettled facet of the due process question, however, requires further factual development by the district court on remand. Plaintiffs assert that if they are declared "ineligible" in the pending state administrative proceeding, the decision will affect not only their right to buses under the current application but could also require them to return vehicles they received under previous grants. N.J. Transit's brief, in passing, implies that only future allocations would be affected: "A proceeding was instituted by N.J. Transit staff to determine whether plaintiff should be declared ineligible for the further receipt of buses." Defendants' Brief at 12. This factual matter must be resolved.[2]

If buses received under past grants would be affected, then the district court must determine whether UMTA asserts any right to participate in a decision requiring Suburban to return vehicles it presently operates. If the court determines that the federal agency has no interest in the matter, the threat to plaintiffs from the N.J. Transit proceeding becomes more immediate. In that event also, the concern for the primary jurisdiction of UMTA would not be applicable. The ripeness issue would assume a different posture because at that point the threat to Suburban's asserted rights is similar to that of the respondents in *Ohio Civil Rights Comm'n v. Dayton Christian Day Schools, Inc.*, — U.S. —, — n. 1, 106 S.Ct. 2718, 2721 n. 1, 91 L.Ed.2d 512 (1986). In that circumstance, the district court could properly focus its attention on whether a property interest exists in equipment received under past grants.[3]

If a declaration of ineligibility applies only to the current and future mass transportation grants, then our previous discussion on ripeness would govern.[4]

**2.** If N.J. Transit reaffirms the suggestion in its brief that state administrative proceedings will not affect past grants to Suburban, the district court may require that a stipulation to that effect be placed in the record to protect plaintiffs.

**3.** It follows, too, that the antitrust and preemption issues might be suitable for resolution at

III

Accordingly, the judgment of the district court will be vacated, and the case will be remanded for further proceedings consistent with this opinion.

that point insofar as they might affect a decision requiring Suburban to return the older buses.

**4.** Since the case will be remanded, plaintiffs will have the opportunity to present their contentions on the separate identity of the two bus companies, if that factor becomes material.