**STATE OF DELAWARE, Plaintiff,**

v.

**William J. BENNETT, Secretary of Education, et al., Defendants.**

**Civ. A. No. 88–155–JRR.**

United States District Court,
D. Delaware.

Oct. 25, 1988.

John J. Polk, Deputy Atty. Gen., Wilmington, Del., for plaintiff.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., William C. Carpenter, Jr., U.S.Atty., Kent A. Jordan, Asst. U.S. Atty., Wilmington, Del., Neil H. Koslowe, Sp. Litigation Counsel, Civil Div., Dept. of Justice, Washington, D.C., Wendell Willkie, Gen. Counsel, Harold Jenkins and Brian Siegel, Dept. of Educ., Washington, D.C., for defendants.

## OPINION

ROTH, District Judge:

In this action, the plaintiff, the State of Delaware, seeks declaratory and injunctive relief against enforcement of the Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, 101 Stat. 1330, 1330–38 (the "1987 Amendments") by the defendants, the Secretary and Department of Education. The case arose when the Secretary directed the Delaware Postsecondary Education Commission (the "Commission") to eliminate, as required by the 1987 Amendments, $3,414,277 in "excess cash," as defined by the 1987 Amendments, in its Guaranteed Student Loan ("GSL") Program cash reserve. Delaware claims that the 1987 Amendments, compelling the elimination of excess cash reserves in its GSL Program, violate several constitutional provisions and that they abrogate contracts between the Delaware Higher Education Loan Program ("DHELP") and the Department.

Presently before the Court are the defendants' motions: (1) to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure; and (2) to transfer this action, pursuant to 28 U.S.C. section 1404(a), to the District Court for the District of Columbia.

## I
## STATEMENT OF FACTS

DHELP was created in 1966 to permit Delaware to participate in the GSL Program created by the Higher Education Act of 1965, as amended, 20 U.S.C. section 1071 *et seq.* The Commission is Delaware's guaranty agency; it assumed operational responsibility for DHELP in November, 1985. It is one of 58 agencies which guaranty and service student loans under the GSL Program. These guaranty agencies have satisfied statutory criteria enabling them to receive advances and reimbursements from the Secretary for losses on defaulted loans they have insured, as well as payments for administrative costs. One of the statutory requirements is that the guaranty agency must keep a "reserve fund." 34 C.F.R. 682.410.

Through sound fiscal investment and management, the Commission has accumulated a sizeable reserve fund. As of February, 1988, Delaware's cash reserve fund totalled $4,099,470. Funds represented in the reserve fund are advances, reimbursements, and administrative costs paid by the Secretary; state appropriations and other gifts or grants; funds collected on defaulted loans; and earnings generated through the investment of the assets of the reserve fund. Brief in Support of Defendants' Motion to Dismiss at 5. Of this balance, only $304,415 represented money received as advances from the federal government. Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss at 6.

Until the 1987 Amendments were enacted, there was no ceiling on the amount of cash that guaranty agencies could accumulate in their reserve funds. Brief in Support of Defendants' Motion to Dismiss at 6. The 1987 Amendments, by way of a formula, establish ceilings for the reserve funds. The 1987 Amendments require the Secretary to direct any guaranty agency, having cash reserves which exceed this ceiling, to eliminate this "excess cash" by one of four prescribed statutory methods. The 1987 Amendments also contain a waiver procedure whereby the Secretary may waive, in whole or in part, the remedies for the elimination of "excess cash" reserves if he determines that: (1) a guaranty agency's financial condition has deteriorated significantly; (2) significant changes in economic circumstances have rendered the agency's cash reserve ceiling inadequate; or (3) an agency would be compelled to violate contractual obligations existing on December 22, 1987 that require a specified level of cash reserves.

On February 9, 1988, the Secretary wrote to the Commission, informed it that it had "excess cash" as calculated by the formula in the 1987 Amendments, and directed the Commission to eliminate the excess, using one of the four methods, by February 29, 1988. The Secretary also informed the Commission that it had until February 29 to file a request for a waiver pursuant to 20 U.S.C. section 1072(e)(3). This deadline was later extended to March 15, 1988. On March 8, 1988, the Commission wrote to the defendants to request a sixty day extension of the time to submit a waiver request. The Department denied this request on March 11, 1988 and informed the Commission that "[t]he waiver requests submitted by guaranty agencies will be reviewed by an informal appeal process." Appendix to Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss at A–10. On March 14, 1988, the Commission filed a request for a waiver. The parties scheduled an oral presentation of the request for a waiver on April 29, 1988. This presentation was not "on the record." Following the presentation, on May 5, 1988, the Department wrote to the Commission that the Secretary would not respond to the request for a waiver within the statutory six week period because the Department had received thirty-six other waiver requests and this constituted "unusual circumstances" justifying the delayed response under 20 U.S.C. section 1072(e)(3)(B). The guaranty agencies for the states of Iowa, Ohio, and Wisconsin have also filed actions against the defendants in the federal district courts in their respective states.

To this date, no decision from the Department has issued on the Commission's request for a waiver.

## II

### THE MOTION TO DISMISS

The defendants move for dismissal on two separate grounds. First, the defendants claim that there is no subject matter jurisdiction and seek dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Once a party seeks dismissal of an action under Rule 12(b)(1), the non-moving party bears the burden of proving that there is indeed jurisdiction. Second, the defendants claim that the plaintiff has failed to state a claim upon which relief can be granted and seek dismissal under Rule 12(b)(6). In this situation, the moving party bears the burden of proving that no claim has been stated.

### A. *Lack of Subject Matter Jurisdiction*

Simply put, the defendants claim that the Court does not have subject matter jurisdiction because there is no "case or controversy" as required by Article III of the United States Constitution, and even if there were, the question presented to the Court is not "ripe" for adjudication. After reading the facts in the light most favorable to the nonmoving party, we disagree and find that Delaware has satisfied the constitutional "case or controversy" requirement and the requirements of the prudential doctrine of ripeness.

### ■ 1. *The "Case or Controversy" Requirement.*

Article III requires that a "case or controversy" exist before a federal court exercises its jurisdiction. In practical terms this requires that there be "a real, substantial controversy between parties having adverse legal interests, a dispute having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (quoting *Railway Mail Association v. Corsi,* 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945)). Although this test is inherently vague, *Democratic Party v. National Conservative Political Action Committee,* 578 F.Supp. 797, 812 (E.D.Pa. 1983), it reflects the fact that there is no

precise test that clearly identifies a "case or controversy." *Babbitt,* 442 U.S. at 297, 99 S.Ct. at 2308.

When a plaintiff challenges the validity of a statute, however, the test becomes somewhat more well-defined. Article III requires that a "plaintiff who challenges a statute must demonstrate a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement." *Pennell v. City of San Jose,* — U.S. —, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988) (quoting *Babbitt,* 442 U.S. at 298, 99 S.Ct. at 2308). Applying this test to the facts of this case leads to the inescapable conclusion that there is indeed a "case or controversy" between the State of Delaware and the defendants.

In seeking to enforce the statute *sub judice,* the 1987 Amendments, the defendants have asserted an ownership interest in the "excess cash" by directing Delaware to deplete the "excess cash" in its GSL Program reserve fund. Prior to the passage of the 1987 Amendments, Delaware claimed that the funds in its GSL Program cash reserve fund, except for the funds provided by the Secretary through advances, reimbursements, and funding of administrative costs, belonged to the state. With the passage of the 1987 Amendments, however, the Department and Secretary of Education, for the first time, asserted that none of these "excess funds" belonged to Delaware, but that all were the property of the federal government. Thus, the "case or controversy" in this case includes the question of the ownership of the reserve funds. The issue is not merely who has the right to possession of the excess cash in the reserve fund. Whether or not the State of Delaware retains possession of the "excess cash" through the waiver process does not decide the issue of the ownership of the various monies which have found their way into the reserve fund. Because of this controversy over ownership of the funds, we find that there is a "case or controversy" between the state and the defendants. *See also infra* Part II, A., 2., ¶ 3.

■ 2. *The Ripeness Requirement.* Closely related to the constitutional "case or controversy" requirement is the ripeness doctrine which is based on prudential considerations. The ripeness doctrine "is a facet of the case or controversy requirement of Article III," *Cities Service Co. v. Department of Energy,* 520 F.Supp. 1132, 1139 (D.Del.1981), that permits courts to refrain from issuing premature or unnecessary decisions. When preenforcement relief from an administrative agency action is sought, ripeness is determined according to the factors identified in three Supreme Court cases: *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Association v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); and *Gardner v. Toilet Goods Association,* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). In accordance with the *Abbott Laboratories* trilogy, this Court has held that a claim is ripe for preenforcement review if each of four questions can be answered in the affirmative: (1) are the issues presented purely legal; (2) are the issues based on final agency action; (3) does the controversy have a direct and immediate impact on the plaintiff's business; and (4) will the litigation expedite final resolution rather than delay or impede effective agency enforcement? *Texaco, Inc. v. Department of Energy,* 604 F.Supp. 1493, 1506 (D.Del.1985) (citing *Phillips Petroleum Co. v. Federal Energy Administration,* 435 F.Supp. 1239, 1245 (D.Del.1977)). In the instant situation, the answer to all four questions is "yes," and therefore this Court determines that the controversy is ripe for adjudication.

First, Delaware makes a purely legal argument by challenging the constitutionality of the 1987 Amendments. Whether or not the 1987 Amendments are constitutional is a legal question ready to be determined and unaffected by any factual record to be developed between the parties.

Second, the action at the heart of this dispute is final, notwithstanding the defendants' argument that the February 9, 1988, letter directing Delaware to eliminate its cash reserves was merely a "notifica-

tion." What action constitutes final agency action can be determined by examining whether rights or obligations have been established or legal consequences will flow from the action. *Port of Boston Marine Terminal Association v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970); *Suburban Trails, Inc. v. New Jersey Transit Corp.,* 800 F.2d 361, 365–66 (3d Cir.1986). The "notification" that Delaware received stated, "The Secretary has determined that your agency is *required* to reduce its reserves by $3,414,277 ... [a]ccordingly, you are *directed* to eliminate the excess ... [and] if you fail to communicate with the Department by [the cut-off date,] the Department will select the method for recovering funds." Appendix to Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss at A–57–58 (emphasis supplied). We find that, upon receipt of this letter from the Department of Education, Delaware was obliged by the Secretary to reduce the excess cash in its GSL Program cash reserves fund. Furthermore, we are convinced that, if the plaintiff does not reduce its GSL Program cash reserves by the amount demanded, the Department could pursue legal remedies to require the state to do so. As such, we view the letter as final action by the defendants.

■ Even if the issue of ownership, rather than possession, could be decided by the granting of a waiver, the availability of a waiver from the Department plays an insignificant role in our consideration of the finality of the defendants' action. That the defendants' action is final is not altered by the chance that the Department could grant Delaware or another state an exception pursuant to 20 U.S.C. section 1072(e)(3). Our thinking on this issue is not novel. This Court has considered an almost identical issue twice before and in both instances the Court reached the same conclusion. In *Phillips Petroleum Co. v. Federal Energy Administration,* 435 F.Supp. 1239 (D.Del.1977), and *Texaco,* this Court considered the finality of agency action when a waiver exception was available.

The defendant in each case, the Department of Energy (and its predecessor agency, the Federal Energy Administration), argued that because a waiver was available, its action was not final agency action. This Court reached the opposite conclusion in each case, holding that the "mere possibility [the agency] could decide, in the exception proceedings ... to relieve one or more of the companies of the regulatory requirement which ... has [been] determined to be final, binding and enforceable, does not deprive this Court of the authority to review the agency's unequivocal interpretation of the applicable regulations." *Texaco,* 604 F.Supp. at 1506–07 (citing *Phillips Petroleum,* 435 F.Supp. at 1246).

We reject the notion that a different analysis is required because the standard for a waiver is less strict in this case than the waiver standard in the *Texaco* and *Phillips Petroleum* cases. The waiver standard in the 1987 Amendments provides that the Secretary *may* waive, in whole or in part, reduction of excess cash reserves if he determines that: "(1) a guaranty agency's financial position has *deteriorated significantly;* (2) *significant* changes in economic circumstances or the loan insurance program render the agency's cash reserve ceiling inadequate; or (3) an agency would be compelled to violate contractual obligations existing on December 22, 1987 that require a specified level of cash reserves." Brief in Support of Defendants' Motion to Dismiss at 8–9 (emphasis supplied); 20 U.S. C. § 1072(e)(3). Although "significant deterioration" or "significant change" is perhaps a less strict standard than the "gross inequity" or "serious hardship" standard in the *Texaco* and *Phillips Petroleum* cases, it does not change our analysis. The standard in the instant case, like the waiver standard in the *Texaco* and *Phillips Petroleum* cases, is discretionary. Thus, even if the Secretary were to find that the Commission's financial position had deteriorated significantly and that significant economic changes had occurred, he is not required to grant the Commission a waiver. In this light, the possibility of Delaware receiving a waiver is speculative at best. Therefore we conclude that the availability of a waiver in this case does not change our characterization of the Department's action as final.

Further, as we stated earlier, the real controversy in this case is over who controls the funds in the Delaware GSL reserve fund. A waiver would resolve the issue of possession of these funds, but it would not resolve the question of ownership. Only a resolution of the dispute on the merits can answer the question of who has rightful ownership of the monies which comprise the reserve fund.

Third, we find that the present controversy has a direct, continuing, and immediate impact on the Commission's operations. It is irrelevant that the defendants have not sought enforcement against the Commission with respect to its demand to reduce the excess cash in the GSL Program cash reserves. The fact is that the Commission must administer that fund, making decisions as to whether to honor its reimbursement commitments, without knowing whether it will have to reduce the fund by the $3,414,277 demanded in the February 9th letter. In this situation, the threat of injury is enough to disrupt the Commission's operations so that the Commission "does not have to await the consummation of the threatened injury to [seek] preventive relief." *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974).

Finally, it is clear that the litigation of the issues in this lawsuit will expedite a final resolution of the dispute and not merely impede or frustrate the Department's enforcement of the 1987 Amendments. If the plaintiff succeeds on the merits of its constitutional challenge, the defendants' enforcement efforts, and consideration of the waiver applications, will be unnecessary.[1] Additionally, the defend-

---

1. The Court finds that the possibility of the Department granting Delaware's application for a waiver is rapidly approaching, if it has not already arrived at, the futile stage. Delaware applied for a waiver on March 15, 1988, Plaintiff's Answering Brief at 19, which meant, under 20 U.S.C. § 1072(e), that the Department should have ruled on it within six weeks: by April 26,

ants have failed to provide evidence that continuation of this lawsuit will disrupt consideration of the waivers now pending before the Secretary. Without a particularized showing by the defendants that continuation of this lawsuit will disrupt their functioning, the Court cannot characterize this lawsuit as one which seeks to "delay or impede effective agency enforcement." *Phillips Petroleum*, 435 F.Supp. at 1247–48.

The Court is well aware of the "salutary rule" of constitutional jurisprudence that "courts should avoid whenever possible a premature adjudication that duly enacted legislation is unconstitutional." *NUI Corp. v. Kimmelman*, 765 F.2d 399, 403 (3d Cir. 1985). But by permitting this case to proceed, we are committing no violence to that rule. The defendants argue that *Stoner v. Presbyterian University Hospital*, 609 F.2d 109 (3d Cir.1979), applies this rule and is controlling in the instant case. In *Stoner*, the plaintiffs appealed the district court's dismissal of their challenge to section 509 of the Pennsylvania Health Care Services Malpractice Act. *Id.* at 110. The plaintiffs had argued in the district court that this section was unconstitutional because, by restricting appeals from the required arbitration proceeding to the state courts, it encroached on the diversity jurisdiction of the federal courts. *Id.* at 111. The Third Circuit determined that the district court was correct in dismissing the plaintiffs' constitutional challenge as premature.

The court of appeals reasoned that the district court had never been faced with a direct application of section 509 because the plaintiffs had not submitted their claim to arbitration. *Id.* at 112. Where this case differs from *Stoner* lies in the fact that an arbitration decision in favor of the Stoners might award them complete relief and their constitutional challenge would never become necessary. In the present case, the

granting of the application for waiver would not give the plaintiff full relief because, although it would resolve the issue of possession, it would not resolve the question of the ownership of the reserve fund.

We find, therefore, that the plaintiff has met its burden of proving that there is a "case or controversy" and that the issue is ripe for adjudication by this Court. Thus, there is subject matter jurisdiction. The defendants' Rule 12(b)(1) motion to dismiss will be denied.

### B. *Failure to State a Claim*

■ The defendants also seek dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted because the defendants have failed to exhaust an available administrative remedy. The defendants argue that because Delaware applied for a waiver, pursuant to 20 U.S.C. section 1072(e)(3), it must first exhaust that remedy before seeking relief in this Court.

Although it is a "long settled rule ... that no one is entitled to judicial relief ... until the prescribed administrative remedy has been exhausted," *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938), it is not true that the exhaustion of administrative remedies doctrine is always applicable. For example, in *Republic Industries v. Central Pennsylvania Teamsters Pension Fund*, 693 F.2d 290 (3d Cir.1982), the Third Circuit held that a facial constitutional attack on the statute in question made the doctrine inapplicable.

We review the *Republic Industries* decision at some length because, despite the absence of briefing by either party, we conclude that it controls our analysis of the exhaustion issue in the instant case. In *Republic Industries*, the plaintiff made a facial challenge to the constitutionality of

1988. *Id.* On May 3, 1988, pursuant to 20 U.S.C. § 1072(e)(3)(B), which permits the Secretary to delay his response in the face of unusual circumstances, the Department notified Delaware that it needed more time to respond. As of July 14, 1988, the date that the defendant's

reply brief was submitted, no response had been issued, and as of the date of this opinion, neither party has notified the Court that a decision has been made on Delaware's waiver application still pending before the defendants.

the Multiemployer Pension Plan Amendment Act of 1980 (the "Act"). The Act, retroactive in effect, provided that, when a contributing employer withdrew from a multiemployer pension fund, it had to pay a withdrawal liability. Disputes as to the amount of the liability were to be resolved by an arbitration panel. Republic, although it never submitted its dispute to arbitration, nonetheless attacked the Act on several constitutional grounds. The district court dismissed the complaint on the ground that Republic had failed to exhaust an administrative remedy by failing to pursue the arbitration process. The Third Circuit reversed, however, holding that the exhaustion doctrine was inapplicable in light of the facial constitutional challenge to the Act.

As a preliminary matter, the court of appeals discussed the purposes of the exhaustion doctrine and the applicable exceptions. The exhaustion doctrine has not come under serious attack because it serves well several important functions. First, adherence to the doctrine ensures that courts give appropriate deference to Congress's decision, embodied in statute, that an independent tribunal serve as the initial forum for dispute resolution. *Lyons v. U.S. Marshals*, 840 F.2d 202, 204 (3d Cir.1988) (quoting *Republic Industries*, 693 F.2d at 293). Premature interference by the courts undermines the doctrine of separation of powers. *Republic Industries*, 693 F.2d at 293. Second, requiring exhaustion maintains administrative autonomy by prohibiting unnecessary judicial interference with the administrative process. *Lyons*, 840 F.2d at 204. Third, it permits the administrative agency to use its technical expertise when necessary to aid in the resolution of issues. *Phillips Petroleum Co. v. Federal Energy Administration*, 435 F.Supp. 1239, 1248 (D.Del.1977). Fourth, the doctrine permits the agency "to develop a full factual record where such facts would be useful to the court in resolving" the disputed issues. *Id.* Fifth, adherence to the exhaustion doctrine fosters judicial economy by permitting the administrative tribunal to vindicate the complain-

ant's rights. *Lyons*, 840 F.2d at 205; *Phillips Petroleum*, 435 F.Supp. at 1248.

The court pointed out that this Circuit recognizes three exceptions to the exhaustion requirement. Specifically, exhaustion is not required: when the nonjudicial remedy is inadequate to prevent irreparable injury; when pursuing administrative remedies would be futile; or when the agency action clearly and unambiguously violates a statutory or constitutional right. *Lyons*, 840 F.2d at 205 (citing *Babcock & Wilcox Co. v. Marshall*, 610 F.2d 1128, 1138 (3d Cir.1979)); *Republic Industries*, 693 F.2d at 293. These exceptions apply only in extraordinary circumstances. *Republic Industries*, 693 F.2d at 294 (citing *First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir.1979)).

The court of appeals began its analysis of the applicability of the exhaustion doctrine to the facts in *Republic Industries* with the caution that the doctrine should not be invoked without analysis and that it "should be applied with a regard for the particular administrative scheme at issue." *Id.* at 294 (citing *Bethlehem Steel Corp. v. EPA*, 669 F.2d 903, 906 (3d Cir.1982)). It continued by stating that "[i]f the statutory schema *mandates* exhaustion of an administrative remedy, and if that remedy is adequate in its furtherance of the policies behind the doctrine, then only in extraordinary circumstances ... should the courts excuse exhaustion." *Id.* (emphasis supplied).

Turning to the particular administrative scheme at issue in *Republic Industries*, the Act specifically mandated the initial resolution of withdrawal liability disputes to arbitration. *Id.* at 294–95 (citing 29 U.S.C. § 1401(a)(1)). The court rejected the plaintiff's attempts to circumvent this mandate, and held that arbitration is the type of administrative proceeding contemplated by the exhaustion doctrine. It identified certain aspects of the arbitration process which indicated to it that Congress intended the exhaustion doctrine to apply to disputes regarding withdrawal liability. First, the court noted that Congress provided judicial review of the arbitration deci-

sion. *Id.* at 295 (citing 29 U.S.C. § 1401(b)(2)). Second, Congress had established an elaborate procedural framework to guide the arbitrator. *Id.* (citing 29 U.S. C. §§ 1381–1461). Finally, the court concluded that application of the exhaustion doctrine would further the policies, enumerated above, behind the doctrine.

In the present case, the plaintiff argues, and we agree, that Congress has not mandated exhaustion of the waiver process as a prerequisite to filing suit. The administrative waiver procedure in 20 U.S.C. section 1072(e)(3)(A) is an optional one that does not insist that aggrieved guaranty agencies pursue a waiver to seek relief from the Department's demands to reduce "excess cash" in GSL Program cash reserve funds.

The waiver procedure in the 1987 Amendments lacks the characteristics which persuaded the *Republic Industries* court that the exhaustion doctrine was applicable to the arbitration process under consideration in that case. For example, Congress did not provide in the 1987 Amendments specific judicial review of the Secretary's decision regarding waiver applications. In addition, the 1987 Amendments contain no elaborate framework for the Secretary to follow in determining whether a waiver is appropriate. All the waiver criteria are contained in four short subparagraphs, and the Department admits that there are no guidelines for consideration of the applications. *See* Appendix to Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss at A–10 ("The waiver requests submitted by guarantee agencies will be reviewed under an informal appeal process.").

Moreover, in the present case the application of the exhaustion doctrine cannot further the policies behind that doctrine. Congress has given no indication that disputes regarding the Department's demands to reduce "excess cash" in GSL Program reserve funds cannot be heard in the courts. To the contrary, 20 U.S.C. section 1082(a)(2) gives this Court jurisdiction over suits

against the Secretary under the GSL Program without limitation. Therefore, by entertaining this case, we do not encroach on any decision of Congress to create an independent tribunal as the initial forum for dispute resolution.

Additionally, by not requiring exhaustion we do not infringe on administrative autonomy in the area of dispute resolution because Congress has given no such autonomy to the defendants. No technical expertise of the Department is needed to resolve the issues that the plaintiff raises in its complaint, nor is there a need for more complete factual record to assist the Court. Finally, requiring Delaware to complete the waiver process before the Court considers the plaintiff's complaint will not ensure the efficient use of government resources. Even if waiver is granted, the issue of ownership of the funds remains. However, a determination that the 1987 Amendments are constitutional would permit the defendants to proceed to enforce them without further challenge. Likewise, a determination that they are unconstitutional would terminate the defendants' enforcement efforts. Given the present procedural posture of this case, the Court cannot conclude that government efficiency would be served best by requiring exhaustion.

Proceeding further, even though we have determined that exhaustion of the waiver procedure is not mandated by the 1987 Amendments, we will also examine the adequacy of the remedy that Delaware could receive if the Court were to require exhaustion. We conclude that if such a remedy were obtained, it would still be inadequate under the *Republic Industries* analysis.

In *Republic Industries*, the court stated that "the exhaustion doctrine presupposes an adequate administrative remedy," *Republic Industries*, 693 F.2d at 295, and that "no administrative remedy is adequate if it fails to satisfy the policy justifications of the doctrine." *Id.*[2] Thus, the question for this Court becomes whether requiring

**2.** The district court in *Patlex Corp. v. Mossinghoff*, 585 F.Supp. 713 (E.D.Pa.1983) followed the *Republic Industries* analysis as it applied to

the adequacy of administrative remedies. *Id.* at 720–22.

exhaustion would further the doctrine's five previously identified purposes.

The court in *Republic Industries* distinguished between two different types of constitutional attack and determined that a constitutional attack on a statute as applied is within an administrative agency's power to decide, but that a facial constitutional attack against the statute is not. The court found Professor Kenneth Culp Davis's reasoning persuasive:

> A fundamental distinction must be recognized between constitutional applicability of legislation to particular facts and constitutionality of the legislation. When a tribunal passes upon the constitutional applicability, it is carrying out the legislative intent, either express or implied or presumed. When a tribunal passes upon the constitutionality of the legislation, the question is whether it shall take action which runs counter to the legislative intent. We commit to administrative agencies the power to determine constitutional applicability, but we do not commit to administrative agencies the power to determine constitutionality of legislation.

3 K. Davis, Administrative Law Treatise, § 20.04, at 74 (1958).

The *Republic Industries* court determined that the facial constitutional challenge to the validity of the Act in that case was not something which could be determined by requiring exhaustion. "To compel arbitration in the context of a facial challenge would promote neither deference to Congress nor administrative autonomy." *Republic Industries*, 693 F.2d at 296. Indeed, as the court noted, to require the arbitration panel to rule on the constitutionality of the Act would violate the principles of separation of powers by allowing a body other than the judiciary to perform an function in the "exclusive prerogative of the judiciary." *Patlex Corp. v. Mossinghoff*, 585 F.Supp. 713, 721 (E.D.Pa.1983). Furthermore, administrative autonomy would not be furthered because the arbitration panel could not resolve the constitutional issues raised by Republic.

Wary of the Supreme Court's admonishment that "constitutional issues should not be decided and legislation should not be invalidated, if a controversy may be resolved on some other ground," *Babcock & Wilcox*, 610 F.2d at 1137, the *Republic Industries* court recognized that the mere allegation of a constitutional issue does not excuse exhaustion. "Additional evidence of the administrative tribunal's incapacity *either* to moot constitutional issues *or* to establish a factual matrix for judicial review must be shown before exhaustion can be excused." *Republic Industries*, 693 F.2d at 296 (emphasis supplied). The court found that the arbitration panel could perform neither function.

In the present case, the plaintiff mounts a facial constitutional attack against the 1987 Amendments. Delaware claims that the 1987 Amendments violate its fifth amendment property and equal protection rights, section 4 of Article IV, the tenth amendment, and section 4 of the fourteenth amendment and that they abrogate contracts between DHELP and the Department. After evaluating the plaintiff's claims using the court's analysis in *Republic Industries*, we hold that the plaintiff need not exhaust the waiver application procedure (the administrative remedy in this case) because the remedy is inadequate.

We have already concluded, *supra*, that none of the purposes of the exhaustion doctrine are served by requiring exhaustion, but we did not focus on the constitutional quality of Delaware's challenge. Therefore, we examine here that aspect of the plaintiff's challenge. Because Delaware mounts a constitutional attack against the 1987 Amendments, requiring the defendants to resolve these challenges would violate the separation of powers principles in the same way that the *Republic Industries* court concluded they would be violated by requiring exhaustion in that case. Reviewing the facial constitutionality of a statute is an inherent power of the judiciary and cannot be assumed by an administrative agency. It is inappropriate therefore to commit this determination to the defendants. Continuing this analysis,

it is logical to conclude that administrative autonomy would not be served by requiring exhaustion because the part of the relief that Delaware seeks, a declaratory judgment holding that the 1987 Amendments are unconstitutional, cannot be granted by the defendants, but only by a court.

As noted earlier, this Court is sensitive to the prudential rule that "courts should avoid whenever possible a premature adjudication that duly enacted legislation is unconstitutional." *NUI*, 765 F.2d at 403. Under the analysis in *Republic Industries*, however, exhaustion is excused in this case because the defendants can neither moot constitutional issues nor establish a helpful factual matrix for judicial review.

As the defendants admit, the plaintiff's claims are constitutional. Brief in Support of Defendants' Motion to Dismiss at 1. Even if the defendants were to provide Delaware with a waiver, these constitutional claims would not be mooted. *See Patlex*, 585 F.Supp. at 723. Delaware challenges the validity of the 1987 Amendments alleging that they violate important constitutional provisions. As we have already stated, the controversy in this case is over ownership, not possession, of the funds in the reserve fund. Thus, even if Delaware were to receive a waiver from the defendants (which would allow Delaware to retain possession of the funds), the question of ownership would not be resolved. By ordering Delaware to reduce the "excess cash" in its GSL Program reserve fund, the defendants assert an ownership interest in the funds that will remain unaffected by the defendant's decision on Delaware's application for a waiver.

Further, even if we were to conclude that receipt of a waiver by Delaware would moot their claims, requiring exhaustion in this case would not develop a "factual matrix for judicial review." *Republic Industries*, 693 F.2d at 296. As we concluded in our discussion on the issue of ripeness, *supra*, "[w]hether or not the 1987 Amendments are constitutional is a legal question ready to be determined and unaffected by any factual record to be developed between the parties." In light of this conclusion,

the *Republic Industries* analysis provides that exhaustion may be excused.

We find, therefore, that because the plaintiff has mounted a facial constitutional challenge to the 1987 Amendments and because pursuing the waiver procedure can "neither moot the constitutional issues presented by resolving this matter on nonconstitutional grounds nor develop a [helpful] factual matrix" for the Court to review, there is no adequate administrative remedy for the plaintiff to pursue. *Id.* at 297. In this case, the underlying policy justifications for requiring exhaustion are absent and it would be futile to compel exhaustion. Therefore, under the Third Circuit's analysis in *Republic Industries*, we will not require exhaustion. Having reached this conclusion, we will deny the defendants' motion to dismiss for failure to state a claim upon which relief can be granted.

## III

### THE MOTION TO TRANSFER

■ Having determined that the defendants' motion to dismiss will be denied, we turn now to their motion to transfer. The defendants have moved to transfer this case to the District Court for the District of Columbia. For the defendants to succeed on their motion to transfer this case, they must satisfy 28 U.S.C. section 1404(a) which requires that a transfer be to a district or division where the suit might have been brought, "[f]or the convenience of the parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a).

Under 28 U.S.C. section 1391(e), venue for actions in which the defendant is an officer or an agency of the United States lies in any judicial district where: (1) the defendant resides; (2) the cause of action arose; (3) where real property involved in the dispute is located; or (4) where the plaintiff resides if no real property is involved in the dispute. Thus, this action could have been brought properly in Delaware, where the plaintiff resides, or in the District of Columbia, where the defendants reside. The plaintiff chose Delaware as a

convenient forum in which to bring this suit. *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971), governs this Court's analysis for transferring cases. The Third Circuit stated in *Shutte* that "a plaintiff's choice of forum is a paramount consideration in any determination of a transfer request." *Shutte*, 431 F.2d at 25. Only when the balance of convenience is *strongly* in favor of the defendant will the plaintiff's choice of forum not prevail. *Id.*

Although the defendants contend that "it appears that [this action] will be resolved on briefs with no trial and no live testimony from witnesses," Brief in Support of Defendants' Motion to Transfer at 5, Delaware claims that it intends to offer the testimony of witnesses who reside in the state. Delaware's Answering Memorandum at 1–2. Without speculating as to whether this action will be decided on the briefs, the Court concludes that transferring this case would shift any burden of travel from the defendants to the plaintiff and that is inappropriate. *See Read Corp. v. Portec*, No. 88–29 (D.Del. Sept. 14, 1988) [available on WESTLAW, 1988 WL 125128]; *Derry Finance N.V. v. Christiana Co.*, 555 F.Supp. 1043 (D.Del.1983).

Turning to the question of the interests of justice, we agree with the defendants' contention that the avoidance of multiple litigation of the same or related issues in more than one court is a strong interest of justice factor. But as this Court stated in *Amoco Production Co. v. United States Department of Energy*, 469 F.Supp. 236, 244 (D.Del.1979), this "does not [mean] that the government is automatically entitled to have any pre-enforcement review actions transferred." This is especially true in this case. Presently, there is no case pending in the District of Columbia with which this case could be consolidated if we were to grant the motion to transfer. *Iowa v. Bennett*, No. 88–142–B (S.D.Iowa Sept. 26, 1988) [available on WESTLAW, 1988 WL 124730] (ruling denying motion to transfer) at 1. Moreover, the other three districts where similar cases are pending, the Southern District of Iowa, the Western District of Wisconsin, and the Southern District of Ohio, have denied motions to transfer the cases pending before them. *Id.* Clearly, the interest of justice does not favor transferring this case to the District of Columbia.

We find, therefore, that the defendants have not proved that the convenience of the parties and witnesses and the interest of justice strongly favor transfer. Because the defendants have not met their burden, the motion to transfer will be denied.