NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0791n.06
Filed: September 14, 2005

No. 04-3587

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

COMMUNITY MENTAL HEALTH )
SERVICES OF BELMONT, HARRISON )
AND MONROE COUNTIES, OHIO, )
)
    Plaintiff-Appellant, )
)
v. )  ON APPEAL FROM THE UNITED
)  STATES DISTRICT COURT FOR THE
)  SOUTHERN DISTRICT OF OHIO
MENTAL HEALTH AND RECOVERY )
BOARD SERVING BELMONT, HARRISON )
& MONROE COUNTIES; LINDA )
PICKENPAUGH, individually and in her )
official capacity of Director; MICHAEL F. )
HOGAN, in his official capacity as Director, )
Ohio Department of Mental Health; TOM )
HAYES, in his official capacity as )
Director, Ohio Department of Job and Family )
Services, )
)

    Defendants-Appellees.


      **Before: BOGGS, Chief Judge; ROGERS, Circuit Judge; and SHADUR, District Judge.**[*]

      **Rogers, Circuit Judge.** Plaintiff Community Mental Health Services of Monroe, Belmont,

and Harrison Counties, Ohio ("CMHS") appeals the district court's decision dismissing its case on

---

      [*]The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

the grounds of sovereign immunity and failure to state a claim. CMHS, a non-profit corporation that

provides mental health services to three Ohio counties, principally alleged that the Mental Health

and Recovery Board of Belmont, Harrison, and Monroe Counties ("MHRB") violated CMHS's due

process rights when MHRB unilaterally withheld money from payments owed to CMHS in order

to address an alleged overpayment made by MHRB to CMHS several years earlier.[1]  We affirm the

dismissal of the case because CMHS's claims are not ripe.

**I.**

The facts, as ably set out by the district court, are recounted here.

Plaintiff CMHS is a non-profit corporation organized in the State of Ohio whose principal purpose is to provide mental health services to the areas of Belmont, Harrison and Monroe counties.  CMHS contracts with the Mental Health Recovery Board (the MHRB) to provide mental health services to both Medicaid and non-Medicaid recipients in the above counties.  Pursuant to this contract, CMHS receives reimbursement for the mental health services that it has provided to Medicaid eligible individuals from the combination of federal, state and local matching funds.

Defendant MHRB is a political subdivision of the State of Ohio (defined in Ohio Revised Code § 340.01(B)).  The MHRB receives Medicaid and other funds from the Ohio Department of Mental Health ("ODMH") for purposes of contracting with third parties to provide mental health services to individuals who are eligible for Medicaid as well as individuals who are not Medicaid-eligible in the counties of

---

[1]CMHS also named as defendants MHRB's Executive Director, Linda Pickenpaugh, in her individual and official capacities; the Director of the Ohio Department of Mental Health ("ODMH"), Michael Hogan, in his individual and official capacities; and the Director of the Ohio Department of Job and Family Services ("ODJFS"), Tom Hayes, in his individual and official capacities.  In a Supplemental Suggestion of Mootness of the Director of ODJFS, the current Director of ODJFS, Barbara Riley, indicated that she has replaced Tom Hayes.  The official capacity suit is therefore now against Riley, while the individual suit continues against Hayes.  For convenience, this opinion will only refer to Hayes, even in the context of the official capacity claim.

Belmont, Harrison and Monroe, Ohio (the "District"). The MHRB has been designated to administer the community mental health services Medicaid program ("Community Medicaid Program") by Defendants Hogan and Hayes. Defendant Pickenpaugh is the Executive Director of MHRB.

Defendant Hayes is the Director of the Ohio Department of Job and Family Services ("ODJFS"), the agency of the State of Ohio designated as the single state agency to administer Ohio's Medicaid program. Defendant Hogan is the Director of ODMH, which has been designated by ODJFS to administer the Community Medicaid program.

In the state fiscal year ("SFY") 1998, the MHRB and the CMHS had a Medicaid contract in place to provide mental health services to both Medicaid and non-Medicaid eligible individuals. In SFY 1998, the CMHS also contracted with the MHRB to provide non-Medicaid services. Submitted with the non-Medicaid contract was a budget which identified the funds available to pay for mental health services that CMHS would provide to Medicaid and non-Medicaid eligible individuals alike. During SFY 1998, the CMHS also had a "Provider Agreement" with ODJFS in place.

In the fall of 1998, MHRB's auditors audited CMHS for SFY 1998. As part of the audit, the MHRB performed a "reconciliation," which determines whether a contractor, like CMHS, has provided more units of service than budgeted to Medicaid-eligible individuals and/or others, and whether the contractor's expenses for those services were less than those projected. Upon the audit and reconciliation, MHRB's auditors determined that the CMHS should refund Medicaid Federal Financial Participation funds to the MHRB. CMHS repaid those funds. The MHRB audit was subsequently finalized and closed.

After the audit was closed the MHRB demanded that the CMHS re-pay Medicaid matching funds in the amount of $73,166.76 for SFY 1998. In May and June of 2003, the MHRB unilaterally withheld $10,000.00 each month from payments due CMHS from its SFY 2003 contract to repay the alleged Medicaid match overpayment until it received $73,166.67.

Thereafter, Defendant Hogan directed the MHRB to stop withholding payments from CMHS in accordance with the ODJFS's request. The MHRB returned $20,000.00 to CMHS. Plaintiff submits that Defendant Hayes has threatened to take future action to recover funds paid to CMHS based upon its SF[Y] 1998 audit.

Plaintiff claims that on June 3, 2003, ODMH told CMHS that Hogan withheld approval of the MHRB's Mutual System Performance Agreement ("MSPA") because of the number of client grievances against CMHS. Additionally,

plaintiff submits that on July 8, 2003, not less than six ODMH officials arrived at CMHS and attempted to conduct a search and seizure. Plaintiff further states that ODMH contacted CMHS clients who had not requested such contact.

First, Plaintiff claims that Defendants MHRB, ODMH and ODJFS deprived plaintiff of its rights within the meaning of the Due Process Clause of the Fourteenth Amendment of the United States Constitution ("the Constitution") when defendants "unilaterally and intentionally misappropriated funds due and owing to plaintiff" for Medicaid services CMHS provided to the District. Plaintiff's Second Count sets forth a claim against MHRB and ODMH for the violation of plaintiff's due process rights by subjecting plaintiff to "continued harassment and interference with purported client rights investigations." Count Three of Plaintiff's Second Amended Complaint alleges that ODMH has violated plaintiff's right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment of the Constitution when ODMH arrived at plaintiff's facility and demanded access to its premises. Finally, Plaintiff claims that Defendant[] MHRB violated plaintiff's rights pursuant to the Fourth and Fourteenth Amendments by failing to train Defendant Pickenpaugh.

*Cmty. Mental Health Servs. v. Mental Health & Recovery Bd.*, No. C2-03-581, slip op. at 2-5 (S.D. Ohio Apr. 22, 2004).

CMHS originally brought suit in state court against only MHRB and Pickenpaugh. On June 27, 2003, MHRB and Pickenpaugh removed the case to the United States District Court for the Southern District of Ohio. After removal, CMHS filed an Amended Complaint in the district court, which named as defendants for the first time Michael Hogan and Tom Hayes, in addition to the original defendants MHRB and Pickenpaugh. A Second Amended Complaint was subsequently filed. On April 22, 2004, the district court granted the defendants' motions to dismiss the complaint.

With respect to CMHS's claimed due process violation in connection with the allegedly misappropriated funds, the district court held that all defendants were entitled to immunity under the Eleventh Amendment. The district court held that Defendants Hogan and Hayes, as directors of ODMH and ODJFS, were state officials. The district court further held that *Ex parte Young*, 209 U.S. 123 (1908), did not provide an avenue of relief against Hogan and Hayes because there was no evidence of a continuing violation and thus no possibility of prospective relief. Hayes had directed Hogan to return the allegedly misappropriated money, Hayes had done so, and CMHS had made only an unsupported statement that Hayes and Hogan had threatened to continue with their unlawful activity. The district court next held that MHRB was an extension of the state with respect to its administration of the Medicaid program, and was therefore entitled to sovereign immunity. With respect to Pickenpaugh, the court held that, as MHRB's director, Pickenpaugh was also entitled to sovereign immunity. CMHS had argued that MHRB and Pickenpaugh had waived their immunity by removing the case to federal court, but the district court held that no waiver occurred.

The district court next considered CMHS's claimed due process violation with respect to the client rights investigations, a claim brought against MHRB, Pickenpaugh, and Hogan as an ODMH official. The court again held the Eleventh Amendment applied with respect to Hogan. With respect to MHRB and Pickenpaugh, the court held that CMHS failed to set forth a claim for a due process violation, because "[t]here is simply no allegation of how the client rights investigations affected any right of plaintiff protected by the Constitution." *Cmty. Mental Health Servs.*, slip op. at 12.

Third, the court considered CMHS's claim that ODMH, through Hogan, violated CMHS's right to be free from unreasonable searches and seizures. The court held first that no search and seizure actually occurred, only an attempted search, and also held that CMHS had not demonstrated a reasonable expectation of privacy in its premises in the context of a client rights investigation. Finally, the court considered CMHS's claim for failure to supervise. The court held that "to the extent plaintiff's failure to train claim implicates defendant's appropriation of funds, policy development, allocation of resources and maintaining reserve accounts, the claim is dismissed," because these were legislative acts entitled to immunity. *Id.* at 14. With respect to CMHS's claim that MHRB permitted Pickenpaugh to "'abuse the public trust'" and "'reduce available mental health services in the district,'" the court held that the allegation was insufficient under *City of Canton v. Harris*, 489 U.S. 378 (1989). CMHS did not allege that MHRB made a deliberate or conscious choice to have the alleged policy, nor did CMHS allege how the deficiency in the training was closely related to CMHS's injury. The district did not explicitly rule on the claims brought against Pickenpaugh, Hogan, and Hayes in their individual capacities; however, the court did dismiss the case in its entirety.

After the district court rendered its decision, at least two of the parties—CMHS and ODJFS—continued in their attempts to resolve a pending administrative proceeding dealing with the SFY 1998 problem. In several motions filed in January 2005, described as suggestions of mootness or motions to supplement the record on mootness, the defendants brought to this court's attention a settlement between CMHS and ODJFS. According to these documents, ODJFS and

CMHS have come to a "full and complete resolution" of the "disputed claim ODJFS proposed against [CMHS]" in the administrative proceeding. The settlement agreement expressly states that it does not resolve claims against ODMH, MHRB, or Pickenpaugh. In addition, the agreement states that it does not resolve any claims against any of the defendants in this proceeding. On the basis of the agreement, on January 5, 2005, ODJFS "closed" CMHS's reimbursement period of July 1, 1997 through June 30, 1998.

## II.

### A.    Due Process Claim Regarding Allegedly Misappropriated Funds

We do not reach the issue of sovereign immunity, on which the district court relied to dismiss CMHS's claim for declaratory relief and for an injunction regarding the allegedly misappropriated funds, because this claim is not ripe.[2] Although CMHS has suffered an alleged injury in the past, through MHRB's withholding of funds, the funds were eventually paid over to CMHS and there are insufficient allegations establishing that the same type of injury is expected to recur in the future. Rather, the injunction that CMHS is seeking would cover any other attempt by the defendants that did not provide notice and a hearing. Because the possibility of a future injury is speculative and the form of the injury unknown, the claim is not ripe.

---

[2]Ripeness, "even in a case raising only prudential concerns, . . . may be considered on a court's own motion." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003).

CMHS sought the following relief on its claim regarding the misappropriated funds, designated Count One:

> As to Count One, Plaintiff requests the following declaratory relief: (i) MHRB Defendants violated due process by taking $20,000 from its SFY 2003 budget; and (ii) ODMH and ODJFS Defendants violated due process by failing to afford Plaintiff any process following MHRB Defendants' unlawful taking. Plaintiff further seeks declaratory and injunctive relief that (i) MHRB Defendants may not take funds from Plaintiff or re-open audits that have been finalized and closed without an adequate procedural remedy, *e.g.*, notice and a hearing; (ii) ODMH Defendants may not authorize or encourage MHRB to take funds from Plaintiff or re-open audits without an adequate procedural remedy; (iii) ODJFS may not permit MHRB Defendants or ODMH to take or authorize the taking of funds from CMHS without an adequate procedural remedy; (iv) ODJFS, ODMH, and MHRB Defendants have no process or procedure for taking or authorizing the taking of funds from CMHS; and (v) to the extent that any procedure exists to redress the deprivations complained of herein, it is inadequate as a matter of law.

Second Am. Compl. ¶ A.

The district court ultimately concluded that MHRB was entitled to Eleventh Amendment immunity on this claim, and that with respect to the official capacity claims against Pickenpaugh, Hogan, and Hayes, the *Ex Parte Young* exception did not apply because the relief sought by CMHS was not sufficiently prospective. Although we do not reach the issue of sovereign immunity, the district court's characterization of the uncertain nature of the relief sought by CMHS is apt.

> In the case *sub judice*, it is uncontested that the funds withheld by the MHRB have been returned to plaintiff. Moreover, Defendant Hayes, in his letter to Hogan, directed the return of the withheld monies and unequivocally declared that any future withhold of any sums required a hearing. The letter states:
>
>> The CMH Board is withholding medicaid payments owed to a Medicaid provider for Medicaid services without prior notice or

> hearing. All Medicaid providers are entitled to due process before any government agency can withhold payments due to the provider. Due process is also required for Medicaid providers that dispute their obligations to the Medicaid program arising from rates paid in the prior fiscal periods. A hearing must be afforded to any provider before funds are withheld.
>
> ODMH will need to take corrective action against the CMH Board to cease its actions of withholding payments due to the Medicaid provider. Once the withholding by the CMH Board stops, ODJFS staff will work with ODMH to determine the most appropriate course of action which may include ODJFS conducting an administrative hearing on the matter.

Upon receipt of Hayes's letter, Hogan directed the MHRB (by letter addressed to Pickenpaugh) to stop withholding payments from CMHS as recovery for past reconciliation of Medicaid match funds.

> The above evidence proves that defendants have fully returned the withheld funds to plaintiff and that no future withholding will occur without a hearing. Although plaintiff asserts that defendants continue to violate plaintiff's due process rights, Plaintiff fails to set forth *how* defendants continue to deprive plaintiff of due process, nor does plaintiff offer any evidence of such alleged violation. For example, plaintiff claims that Defendants Hayes and Hogan have "threatened to press forward with their unlawful taking of plaintiff's funds and unlawful investigation" but plaintiff has not alleged any specific facts to support this contention.

*Cmty. Mental Health Servs.*, slip op. at 7-8 (citations omitted).

Because the nature of any future violation is uncertain, the nature of any possible relief this court could order is also uncertain. Although ripeness concerns more typically arise in cases in which there has been no past violation, ripeness is equally applicable to situation such as this, in which any future violation will almost certainly not take the form of the past actual or threatened violation. For instance, in *Ammex, Inc. v. Cox*, 351 F.3d 697 (6th Cir. 2003), this court dismissed a case due to lack of ripeness where the Attorney General of Michigan had withdrawn a notice of

intended action ("NIA") threatening an enforcement action against the plaintiff, even though the withdrawal expressly provided for circumstances under which the NIA would be reinstated.

Ammex, the plaintiff, operated a duty-free store in Detroit, Michigan, which was situated so that customers departing the store could proceed only across the Ambassador Bridge to Canada. Ammex at one point advertised that its goods, including gasoline and diesel fuel, "could be purchased with 'no state tax, no federal tax.'" 351 F.3d at 700. Michigan, however, required Ammex to pay Michigan state sales taxes and motor fuel taxes, and Ammex was unsuccessful in challenging that position in court. Shortly after Ammex lost its tax refund action in state court, the Michigan Attorney General issued an NIA alleging that Ammex falsely advertised in violation of the Michigan Consumer Protection Act ("MCPA") that its goods could be purchased tax-free. *Id.* at 700-01. The NIA informed Ammex that Ammex had to cease and desist its allegedly unlawful advertising or risk facing suit under MCPA. Ammex responded by filing a declaratory judgment action in federal court, in which it argued that federal duty-free law preempted the MCPA and that the negative implications of the Commerce Clause prevented the enforcement of the MCPA. At the same time, Ammex was challenging a U.S. Customs Service Ruling that the fuel could not be sold duty-free. The ruling was struck down by the Court of International Trade, and for a period of time, the Customs Service took the position that the fuel could be sold duty-free. *Id.* at 701. The federal case proceeded to discovery, after which the Attorney General notified the district court that the NIA had been withdrawn. *Id.* at 702. The withdrawal provided that the NIA would not be reinstated

unless one of two particular "changed circumstances" occurred, namely, that a court or other body

determined that despite the Court of International Trade case, Ammex's goods were taxable. *Id.*

This court explained that "[a]lthough Ammex's claims were not technically mooted by the

Attorney General's withdrawal of the NIA, Ammex's claims are not ripe." *Id.* at 706. This

determination was a result of the consideration of three factors:

> In determining whether a pre-enforcement challenge is ripe, three considerations must be weighed. The first two deal with the "fitness of the issues for judicial determination." One aspect of the "judicial fitness of the issues" is the extent to which the legal analysis would benefit from having a concrete factual context. The second aspect of the "judicial fitness of the issues" is the extent to which the enforcement authority's legal position is subject to change before enforcement. The third consideration deals with the "hardship to the parties of withholding court consideration."

*Id.* at 706 (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), and *Ohio Forestry Ass's*

*v. Sierra Club*, 523 U.S. 726, 733 (1998)). On the first factor, this court held that Ammex's legal

contention "that the MCPA does not apply to its activities because it is preempted by federal statutes

and by the negative implications of the Commerce Clause" could benefit from a concrete context,

even though at heart the issues were legal. *Id.* at 706-07.

> Analysis of any preemption or Commerce Clause issue would benefit from knowledge of just what was forbidden by the MCPA, and what the effects of the state's regulation would be on the policies underlying the Interstate and Foreign Commerce Clauses and the federal statutes relied upon by Ammex. . . . [T]his not a situation where "[n]o factual development can change what the statute bans and what it protects."

*Id.* at 707-08 (quoting *NRA of Am. v. Magaw*, 132 F.3d 272, 291 (6th Cir. 1997)). On the second factor—whether a court should avoid a pre-enforcement challenge that will not permit the enforcement agency to refine its policy— this court held that because there was a strong possibility that the Attorney General would modify her position, this consideration weighed in favor of dismissal on ripeness grounds. *Id.* at 708-09. Finally, this court concluded that because Ammex faced fines if it was ultimately found to have violated the MCPA, Ammex would suffer some hardship in being forced to await enforcement, but that this slight hardship could not overcome the weight of the other two factors. *Id.* at 709-10.

The balance of factors in this case also points to a dismissal on ripeness grounds. The issue is not fit for judicial review, both because the question of what process is due cannot be answered without knowing what type of action, if any, MHRB plans to take in the future if it discovers another alleged overpayment, and because the development of policies to address any such future recoupment actions should be left to the agencies that have the knowledge to do so. Nor will CMHS suffer the type of hardship that warrants judicial review in anticipation of agency enforcement actions.

First, the question of what process CMHS is owed would greatly benefit from a concrete context, a context that cannot be obtained by considering MHRB's alleged past misappropriation of funds. Not only were those funds returned, but it is clear that Hayes, the Director of ODJFS, ordered that overpayments were never to be addressed in that fashion again. That is, although for purposes of a dismissal at the pleadings stage we accept CMHS's allegations that it has been

threatened with future attempts by MHRB to recover for alleged overpayments, it is clear that any such attempt will differ in form from the single past attempt. The argument that CMHS is entitled to process is a legal argument, but like the questions of federal preemption and the coverage of the negative implications of the Commerce Clause in *Ammex*, the degree of protection provided by the Due Process Clause can only be determined in context. The ripeness doctrine is specifically intended to permit courts to avoid speculating on the precise nature of the future harm. Because this court would be compelled to speculate about the possible ways in which MHRB might address any additional alleged overpayments, and speculate about what types of process would be due for each, the first factor weighs against ripeness. *Ammex*, 351 F.3d at 707-08; *see also Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 324 (3d Cir. 1998) (although the eventuality of the application of a statute to the plaintiffs was almost a "certainty," the "great deal of uncertainty regarding *how* the statue will operate against plaintiff[s]" rendered the case not ripe for judicial review).

The second judicial fitness factor, whether retaining this case will deny the agency the opportunity to refine its policy, clearly favors finding this case not ripe. The withholdings complained of by CMHS were not done pursuant to any policy. Rather, ODJFS, through Hayes, appears to be attempting to institute a policy, perhaps for the first time, to deal with alleged overpayments. An order from this court prescribing the exact processes that may and may not be used by MHRB would deprive MHRB, ODMH, and ODJFS of the opportunity to develop those processes in light of their institutional knowledge—knowledge this court does not possess.

- 13 -

Finally, on the third factor, CMHS will suffer no hardship if forced to await MHRB's next attempt to recover alleged overpayments. CMHS alleges that MHRB may attempt to reopen other prior fiscal years and address alleged overpayments in those prior years. There are no actions to be taken or not taken on CMHS's part, no matter how the immediate litigation is resolved. Only the behavior of MHRB, ODMH, or ODJFS will be affected by this court's decision to dismiss the case as not ripe. Nor is this a case in which "the governmental activity 'by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning part[y].'" *Hooker Chem. Co. v. United States EPA*, 642 F.2d 48, 53 (3d Cir. 1981) (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974)). Although CMHS may be somewhat apprehensive about whether MHRB will provide sufficient process in the future, such apprehension is at most a very minor hardship. *See id.*

Taking the three factors together, it is clear that this case is not ripe. Because MHRB has been ordered not to withhold funding from CMHS to address any alleged prior overpayment, any future attempts by MHRB to recoup such an overpayment will differ in form. Without knowledge of what that form will be, this court does not have the concrete context necessary for judicial review. Nor should this court deprive the defendants of the opportunity to develop procedures and processes to handle any future recoupments. Finally, because CMHS will not need to take any action, or forgo any action, due to this court's decision not to review its case at this time, there is no hardship.

This result is supported by a number of other cases. For instance, in *Oregon Natural Resources Council v. Grossarth*, 979 F.2d 1377 (9th Cir. 1992), the Ninth Circuit held that a

challenge to the United States Forest Service's approval of a timber sale was not ripe where the initial sale had been cancelled and a "preannouncement" of another timber sale did not permit the nature of the future sale to be assessed. In *Grossarth*, the approval of a timber sale in the past was a concrete occurrence, which, if litigation had been possible, would have presented no ripeness issues. That concreteness, however, did not transfer to the eventual future timber sale, because although the Forest Service indicated that there would be a future sale, its form was unknown. In the current case, the same structure is present. Despite the concrete facts surrounding MHRB's past withholding of funds, the nature of any future action by MHRB, ODMH, or ODJFS is speculative.

Similarly, in *Renne v. Geary*, 501 U.S. 312 (1991), the Supreme Court held that a case did not present a live controversy ripe for adjudication where any concrete past harm had since become moot and the potential future harm was ill-defined. The plaintiffs, voters and members of county political party committees, had challenged § 6(b) of the California Constitution, which provided that "'[n]o political party or party central committee may endorse, support, or oppose a candidate for nonpartisan office.'" 501 U.S. at 314. The plaintiffs alleged that although they desired to support candidates for nonpartisan offices, and desired to print and read statements containing endorsements in the voter's pamphlet, the defendants City and County of San Francisco had "'deleted all references in candidate[s'] statements for City and County offices to endorsements by political party central committees,'" and would continue to do so in the future. *Id*. at 316-17. The Court first concluded that plaintiffs' "generalized claim that [defendants] have deleted party endorsements from candidate statements in past elections . . . had become moot by the time [plaintiffs] filed suit." *Id*.

at 320. The Court next concluded that no other allegations indicated the presence of a ripe controversy. "The affidavit provides no indication whom the Democratic committee wished to endorse, for which office, or in what election. Absent a contention that § 6(b) prevented a particular endorsement, and that the controversy had not become moot prior to the litigation, this allegation will not support an action in federal court." *Id.* at 321. The Court concluded that it did not possess a "factual record of an actual or imminent application of § 6(b) sufficient to present the constitutional issues in 'clean-cut and concrete form.'" *Id*. at 322-23 (quoting *Rescue Army v. Mun. Court of Los Angeles*, 331 U.S. 549, 584 (1947)).

*Renne* makes clear that the mere existence of some concrete past violation will not render a case ripe where the future violations are of an uncertain nature. As demonstrated above, CMHS's claim is not ripe under the principles articulated in *Ammex*. MHRB's past act of withholding money from CMHS's funding does not change the result of the ripeness analysis.

Because CMHS's claim for declaratory relief and an injunction regarding the allegedly misappropriate funds is not ripe, the claim was properly dismissed. We do not, therefore, need to reach the issue of sovereign immunity on which the district court based its decision to dismiss.

**B.     Remaining Claims**

The remaining claims raised by CMHS—that its rights were violated by a client rights investigation, an alleged search and seizure, and  a failure to supervise—are also not ripe. With respect to the attempted search and seizure, CMHS admits that in fact no search or seizure occurred.

And with respect to the client rights investigation and alleged failure to train claims, it is unclear what the harm was or will be. Accordingly, these claims must await the development of a more concrete factual context.

*1. Search or Seizure*

CMHS alleged that ODMH, through Hogan, violated CMHS's right to be free from unreasonable searches and seizures. The district court held first that no search and seizure actually occurred, only an attempted search, and also held that CMHS had not demonstrated a reasonable expectation of privacy in its premises in the context of a client rights investigation. Because the district court correctly determined that the pleadings alleged only an attempted search and seizure, we need not reach the issue of whether CMHS had a reasonable expectation of privacy. CMHS's claim is not ripe.

CMHS made the following allegations with respect to the search and seizure claim.

On July 8, 2003, not less than six ODMH officials arrived at CMHS and attempted to conduct an unlawful search and seizure by demanding access to the premises; demanding access to staff and clients for interviews; and attempting to unlawfully seize client sensitive and confidential medical records outside the scope of existing client authorizations.

CMHS refused to permit ODMH personnel access, and despite repeated requests, they refused to leave and instead intimidated and harassed CMHS' staff by threatening further investigation and regulatory sanctions and loss of funding.

Second Am. Compl. ¶¶ 50-51. These allegation reveals that no search or seizure occurred.

Where "it is far from clear that any harm will occur," as is the case here, a case will not be considered ripe. *Adult Video Ass'n v. United States Dept. of Justice*, 71 F.3d 563, 568 (6th Cir. 1995). Ripeness concerns are strengthened because the issue of what types of searches or seizures, if any, the Ohio agencies involved may make is clearly an issue that would benefit from a concrete factual context. *See id.*; *Ammex*, 351 F.3d at 707-08. Because the allegations establish no search or seizure, those concrete facts are not now present. And as with the recoupment issue, this court should not deprive the defendants of the opportunity to develop procedures and processes to handle any future need to conduct a search. Finally, there is no hardship because again, CMHS need not change its behavior in any fashion as a result of this court's decision to decline to review. This claim is not ripe for adjudication.

*2. Client Rights Investigation*

CMHS also alleged that MHRB, Pickenpaugh, and Hogan committed a due process violation with respect to client rights investigations allegedly conducted by the defendants. The district court held the Eleventh Amendment applied with respect to Hogan, and that CMHS failed to set forth a claim for a due process violation against MHRB and Pickenpaugh, because "[t]here is simply no allegation of how the client rights investigations affected any right of plaintiff protected by the Constitution." *Cmty. Mental Health Servs.*, slip op. at 12. We need not reach the issue of immunity because, to the extent that the allegedly improper behavior consisted of threats and harassment, there is no cause of action, and to the extent that a violation is expected to occur in the future, the issue is not ripe for adjudication.

CMHS alleged that the "MHRB Defendants and ODMH have deprived Plaintiff of its liberty and property interests in its business by subjecting it to continued harassment and interference in connection with purported client rights investigations." Second Am. Compl. ¶ 66. It is not clear what the defendants allegedly did that interfered with CMHS's purported rights. There is no discernible deprivation in the allegation that "ODMH has made untrue, reckless and malicious statements about CMHS to others before, on and after June 3, 2003, and those statements have been repeated and have had a stigmatizing effect on CMHS's property and liberty interests." Second Am. Compl. ¶ 49. Defamation alone is not enough to invoke due process concerns. *See Paul v. Davis*, 424 U.S. 693, 711 (1976); *see also Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002). Rather, a cause of action will only lie if the defamatory communications are coupled with the "alteration of a right or status previously recognized by state law." *Quinn*, 293 F.3d at 319. Similarly, no deprivation is revealed in an allegation recounting how the defendants "made the false statement that CMHS 'had more grievances against it than any other provider in the State of Ohio.'" Second Am. Compl. ¶ 47. Other allegations reveal only threats. For example, CMHS alleged that ODMH "demanded" that CMHS provide certain client records and permit inspections, Second Am. Compl. ¶ 46, but did not allege that CMHS was forced to comply. In fact, as discussed above, when ODMH officials attempted to search the CMHS building, CMHS successfully denied them access to the contested files. Second Am. Compl. ¶ 51. If CMHS's complaint is construed to allege that these acts, without more, constituted a deprivation, then the district court was correct to conclude that CMHS has failed to state a cause of action.

If, however, the alleged deprivation would occur in the future, then the claim is not ripe for adjudication. As explained above in the context of the alleged attempted search or seizure, a case is not ripe if "it is far from clear that any harm will occur." *Adult Video Ass'n*, 71 F.3d at 568. Without knowing what type of records, if any, the defendants will successfully seize, assuming they even pursue the investigation further, this court does not have the type of concrete facts that permit judicial review. *See id.*; *Ammex*, 351 F.3d at 707-08. Again, as with all claims so far addressed, because CMHS will not need to alter its behavior, there is no hardship. If the defendants take concrete action, CMHS can return to court. The claim is not now ripe.

*3. Failure to Train/Supervise*

Because CMHS's due process and Fourth Amendment claims are not ripe, CMHS's claim seeking an injunction "requiring Defendant MHRB to adequately supervise and train Defendant Pickenpaugh in the conduct of her official duties" is also not ripe. Second Am. Compl. ¶ D. We need not, therefore, reach the issue of legislative immunity, on which the district court based its dismissal of the claim.

With respect to this claim, CMHS alleged in relevant part:

At all times, Defendant MHRB exercised control and direction over its employee, Defendant Pickenpaugh.

Plaintiff has been deprived of its right to due process and to be free from unlawful searches and seizures and has been injured as a result of Defendant MHRB's failure to properly train Defendant Pickenpaugh; Defendant MHRB's failure is its official policy.

Second Am. Compl. ¶¶ 80-81. We have declined to review the alleged violations over which Pickenpaugh presided. The issue of what instruction or supervision MHRB should provide for Pickenpaugh cannot therefore be ripe. To hold otherwise would require this court to order MHRB to provide training with respect to what process is due in a recoupment action, for example, even though this court has determined that it is uncertain what form any such future action will take, and what processes will be owed. Accordingly, the failure to train or supervise claim is not yet ripe.

### 4. Individual Capacity Claims

The claims that CMHS made against Pickenpaugh, Hogan, and Hayes in their individual capacities cannot be distinguished from the official capacity claims. CMHS argues that because the district court failed to address CMHS's claims against Pickenpaugh, Hogan, and Hayes in their individual capacities, this court should remand at least that portion of the case for further proceedings. *See* Appellant's Br. at 28-29. CMHS sought only declaratory and injunctive relief. Second Am. Compl. ¶¶ A-D. Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, *i.e.*, his official capacity. The Supreme Court, in *Hafer v. Melo*, 502 U.S. 21 (1991), explained that the difference between official capacity suits and personal capacity suits derives not from the capacity in which the state official acted at the time of the alleged violation, but rather from the capacity in which the official is sued. 502 U.S. at 27.

CMHS is not seeking to impose individual liability against any of the three individual defendants. Rather, CMHS's entire suit is of the official capacity type. This is apparent from the fact that if Pickenpaugh, Hogan, or Hayes[3] left office, CMHS's lawsuit for an injunction would only be useful to CMHS if it transferred to the successor. It is one of the hallmarks of official capacity suits that the successor in office takes the predecessor's place in litigation. *Hafer*, 502 U.S. at 25. Because the so-called individual capacity claims cannot be distinguished from the official capacity claims, the individual capacity claims are also not ripe for adjudication.

## III.

The judgment of the district court is affirmed.

---

[3]As discussed *supra* note 1, it appears that Hayes has in fact been replaced.